**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:23-CV-00063-RSE**

**FAYE RICCI**                                                                                  **PLAINTIFF**

**VS.**

**CLARK SCOTT, et al.**                                                                  **DEFENDANTS**

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Faye Ricci's Motion for Sanctions against Defendants Clark Scott, Wyatt Scott, and Kelly Scott and Interested Parties Stites & Harbison PLLC and Boehl Stopher & Graves, LLP. (DN 108-1). Defendants Clark Scott, Wyatt Scott, and Kelly Scott filed a response (DN 112), as did Interested Parties Stites & Harbison PLLC (DN 111), and Boehl Stopher & Graves, LLP (DN 118), to each of which Plaintiff filed a reply (DN 116; DN 117; DN 119). At this Court's direction (DN 129; DN 131), the Interested Parties submitted supplemental briefing to aid the Court in resolving the Motion (DN 132; DN 133; DN 134). Also before the Court are Defendants' Motion for Summary Judgment (DN 121), and Plaintiff's Motion for Partial Summary Judgment (DN 123). The Parties consent to the undersigned United States Magistrate Judge's jurisdiction pursuant to 28 U.S.C. § 636(c). (DN 15).

The Court will grant in part and deny in part Plaintiff's Motion for Sanctions, deny Defendants' Motions for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment without prejudice, and re-open discovery for Plaintiff for the limited purposes discussed in this Memorandum Opinion and Order.

I.    Background

This harassment and extortion action is the result of a college living situation that turned sour, culminating in the allegedly defamatory emails at the heart of this lawsuit. It is important to briefly touch on that background and provide a detailed account of the history of the case since all are relevant to the merits of the present motion.

a.    The Events Underlying this Litigation

In December 2021, Plaintiff Faye Ricci's son ("Ricci" and "Ricci's son") was accused of sexual assault. (*See* DN 112-1). The accusation was withdrawn, and no charges were filed. (*Id.*). As alleged in the Complaint, Ricci's son's college roommates, including Defendant Wyatt Scott ("Wyatt"), sought to remove him from their apartment based on that accusation. (DN 1, at PageID #3-5). To do so, Wyatt and the other roommates allegedly, among other things, falsely accused Ricci's son of breaking into Wyatt's room, broke into Ricci's son's room, and repeatedly demanded their landlord evict him. (*Id.*). Things escalated when Ricci's son did not move out and the landlord declined to intervene. (*Id.*).

On February 9, 2022, Ricci began to receive emails from an individual identifying themselves as "Kelly Spencer," using the Gmail account "kellyservergirl@gmail.com." (*Id.* at PageID #5-6). The emails contained allegedly "false and defamatory claims about [Ricci's] son" based on the sexual assault allegations and made "threats of harassment, blackmail, and interference with [Ricci's] personal and professional life, and that of [Ricci's] son" if he did not move out of the apartment by February 11. (*Id.*). Ricci allegedly confronted Wyatt and the other roommates about the emails, and they denied any knowledge or involvement. (*Id.*). The then anonymous owner of the account acted on those threats, sending carbon copies of the emails to Ricci's boss, coworkers, and colleagues, her son's former employer, one of her husband's clients,

and other members of Ricci's professional network. (*Id.*).

b.    Events Prior to this Litigation

Before filing the current lawsuit, Ricci retained attorney Andrew C. Stebbins ("Stebbins") and filed a "John Doe" lawsuit in Indiana to identify the owner the "Kelly Spencer" account. (DN 110, at PageID # 993). Through that lawsuit, Stebbins issued a subpoena to Google; the response listed "kelly@kellyscott.com" as the recovery email linked to the account. (*Id.* at PageID # 994; DN 108-2). Thereafter, Stebbins issued a subpoena to GoDaddy based on the "kellyscott.com" domain. (DN 110, at PageID # 993). In July 2022, Defendant Clark Scott ("Clark"), Wyatt's father, contacted Stebbins via email and said that he received the GoDaddy subpoena. (DN 108-3). Clark identified himself the owner of the "Kelly Spencer" account and indicated that if they could not resolve the matter soon, he was "fully prepared to legal up in Kentucky and prepare for a long public legal circus." (DN 108-3). After, Stebbins issued a second subpoena to Google to determine whether the "Kelly Spencer" account was still active. (*Id.*). Those subpoena results revealed that as of December 2022, the "Kelly Spencer" account was still active, linked to the "kelly@kellyscott.com" recovery email, and there had been no activity on the account since the first subpoena in April 2022. (*Id.*; DN 108-9).

On February 7, 2023, Stebbins sent Clark a draft of the complaint which identified himself, Wyatt's mother and Clark's wife Kelly Scott ("Kelly"), and Wyatt as named Defendants and offered to resolve the claims through settlement. (DN 108-5). In response, Clark said that he was "the only one that knows about the emails," and was "willing to sign an NDA[,]" but was "willing to spend twice as much [as any settlement offer] having fun defending all this and bringing to light any possible wrong doing[.]" (DN 108-5). He clarified that he was "not [] threatening anything, just a matter of law and how court cases go." (*Id.*).

3

c. This Litigation

On February 8, 2023, Ricci filed her complaint in this Court against Defendants Clark Scott, Kelly Scott, Wyatt Scott (collectively, "the Scotts"), and Jane Does 1-4 asserting claims of intentional infliction of emotional distress, tortious interference with prospective economic advantage, harassment, and extortion. (DN 1). The following day, Stebbins received an email from a man named Jeffrey Sexton, identifying himself as Clark's attorney. (DN 110, at PageID # 996-97; DN 108-6). Sexton stated the following:

> With the time I take in coming days to prepare a formal response to your extortionate $35,000 demand of Mr. Scott, I suggest you and Mrs. Ricci . . . contemplate the meaning of "let sleeping dogs lie." Afterall, surely you of all people as a defamation lawyer understand that the only thing worse than actual defamation is having all the same dirty laundry aired in the public record. . . for all to see (including those who never, ever saw or heard about it the "first time" if there even was a first time). Why in the world would she want [her son] to have to answer "yes" to potential employer questions on applications "Are you now or have you ever been the subject of a lawsuit?" Then he has to explain. . .or, worse, lie. . .and what a tangled web we weave….

(DN 108-6). Sexton did not enter an appearance on the record and the Parties do not dispute that he accepted service on the Scotts' behalf.

In April 2023, attorney Kristin Mischel ("Mischel") from the law firm Boehl Stopher & Graves ("BSG") entered her appearance and filed the Scotts' collective answer to the complaint. (DN 9). In May 2023, the undersigned entered the Scheduling Order and set the close of fact-discovery on March 1, 2024. (DN 16). The discovery throughout this case led this Court to believe the counsel was engaged in consistent informal conferral efforts to resolve disputes and the Parties were participating in discovery in good faith. Yet, in a piecemeal fashion, it became apparent to Ricci and now this Court that the latter proved to be untrue.

4

i. Original Discovery Period and the First Discovery Extension

The Parties' first status report stated that the Scotts had served their first set of discovery requests, and Ricci planned to respond and serve her own. (DN 19). Mischel timely served the Scotts' responses to Ricci's requests for admission in September 2023. (DN 108-7). Clark admitted to creating the account and sending the emails, and Kelly and Wyatt denied culpability. (*Id.*). Ricci's Interrogatories and Requests for Production served on each of the Scotts' remained outstanding.

The following month, Mischel raised the Parties' first disputes to the Court over the scope and entry of a protective order and the sufficiency of Ricci's discovery responses. (*See* DN 22; DN 23). In December 2023, while the disputes were ongoing, Mischel provided Clark's responses to Ricci's Request for Production and Interrogatories, three months overdue. (*See* DN 30; DN 108-8). Stebbins accepted the untimely responses.

In those responses, Clark stated that he was unable to produce any of the requested documents or information concerning the "Kelly Spencer" account because it "no longer exists," was deleted "pre-suit[,]" and he "no longer has login access to it." (DN 108-8, at PageID # 780, 785). As for Ricci's request for any communications between Clark, his co-Defendants, or third-parties discussing the emails, Ricci or her son, he (1) represented that he sent one email to a third-party employee at Wyatt and Ricci's son's apartment building that he was "unable to locate[,]" (2) represented that he only spoke about Ricci with counsel, (3) produced one email another parent sent to the apartment building concerning Ricci's son, and (4) represented that he was "not aware of any additional documents or communications" other than those Ricci included with the complaint. (*Id.* at PageID # 784-87). He also represented that he only accessed the account on his "home computer" and produced a copy of his homeowners' insurance policy. (*Id.* at PageID # 780,

5

791-805). Stebbins claims that he questioned whether Clark's pre-suit deletion was accurate considering that the account was active only two months before he filed the complaint. (DN 110, at PageID # 999).

Also in December 2023, as the disputes continued and otherwise delayed discovery, the Court extended the discovery deadline to June 3, 2024.[1] (DN 35). Other than the two initial disputes, the Parties' status reports during the first extended discovery period indicated that they were engaging in discovery and completed Ricci's deposition.[2] (*See* DN 46; DN 51). In May 2024, a few weeks before the extended June 3, 2024, discovery deadline, Mischel withdrew as counsel of record (DN 55), and attorneys Charles H. Stopher ("Stopher") and Paige Ezell ("Ezell") from the law firm Stites & Harbison ("Stites") entered their appearances (DN 54).

ii. The Second Discovery Extension, Ricci's Motion to Compel, and the Deposition of Clark Scott

Almost immediately after Stopher and Ezell entered their appearances, the Scotts moved to extend the discovery deadline to allow new counsel time to get up to speed on the case and complete outstanding discovery. (DN 56). Ricci's response to the motion amounted to a motion to compel. (DN 57). In her response, she informed the Court that Kelly and Wyatt had not responded to Ricci's first set of discovery requests served in August 2023 and Stebbins had repeatedly sought to confer over the issue with Mischel to no avail. (*Id.*). Ricci expressed concern over the preservation of responsive documents and ESI while the requests remained outstanding, and that the lack of document production had stalled her from moving forward in discovery and conducting

---

[1] The protective order dispute was resolved in January 2024, and the dispute over Ricci's discovery responses was resolved in March 2024. (*See* DN 38; DN 48).

[2] Mischel also moved for an extension of time to complete expert disclosures due to the delay in conducting Ricci's deposition. (DN 49). The motion was unopposed, and the Court granted the request. (DN 50).

depositions. (*Id.*).[3] Finally, Ricci informed the Court of Clark's pre-litigation emails threatening a "long public legal circus" and informing Ricci of his intent to take the blame. (*See* DN 57-1).

The Court granted in part the requested extension, extending the fact-discovery deadline to October 3, 2024. (DN 58). In denying Ricci's improper motion to compel without prejudice, the Court directed the Parties to make reasonable efforts to resolve the outstanding discovery issues. (*Id.*). Those efforts appeared fruitful, as the docket reflects that the Parties were working together to schedule depositions (DN 59), and that Kelly and Wyatt served their outstanding discovery responses (DN 61). Kelly and Wyatt's responses, lacking in document production, were served with accompanying verifications, in accordance with the Federal Rules, that included their handwritten signatures. (DN 108-1, at PageID # 700-01; DN 108-14; DN 108-15).

Clark was eventually deposed on September 3, 2024. (DN 108-11). He testified that he could not recall exactly when he deleted the "Kelly Spencer" account or whether it was after he received the GoDaddy subpoena, only that he deleted it not long after everything "went down." (*Id.*). He also testified that he used Spectrum internet and the GoDaddy domain and products at the time he sent the emails, did not use a VPN, and did not "think" he ever accessed the "Kelly Spencer" account through an Amazon Web Server ("AWS"). (*Id.*). This testimony, however, as Stebbins informed Stopher and Ezell via email on September 13, was inconsistent with the 2022 Google subpoena results which showed that the account was accessed through a different internet service provider or used a VPN such as AWS. (DN 108-12). Stebbins told Stopher and Ezell that these inconsistencies, along with the content of the "Kelly Spencer" emails themselves, supported Ricci's position that Wyatt was involved. (*Id.*). Stebbins also informed Stopher and Ezell that he

---

[3] Ricci sought reasonable attorney's fees for the time spent drafting the motion and pursuing the Scotts' overdue responses. (DN 57).

was concerned about spoliation since Clark may well have deleted the account on notice of this litigation. (*Id.*).

Shortly after, Stopher represents that he asked Clark if he could restore access to the "Kelly Spencer" account. (DN 111-1). Clark was able to do so, and Stopher represents that the "Kelly Spencer" account was restored on September 17, 2024. (*Id.*). Stopher also stated that he personally reviewed the account at that time and was unable to access or locate the emails forming the basis of Ricci's claims. (*Id.*). Stopher claims that he informed Stebbins in October 2024 via telephone that he had gained access to the "Kelly Spencer" account and was working to produce its contents. (*Id.*). Stebbins denies that any such conversation occurred. (DN 117-1, at PageID # 1170).

> iii. The Third Discovery Extension, Regaining Access to the "Kelly Spencer" Account, and the Depositions of Kelly and Wyatt Scott

Contemporaneous with Clark and his counsel's efforts to access the "Kelly Spencer" account, Stebbins filed a motion for extension of time, apprising the Court of his concerns after Clark's deposition and seeking to conduct additional discovery, including a second set of discovery requests, forensic imaging of the hard drives for all three of the Scotts' devices, and the depositions of Kelly and Wyatt to determine who sent the emails and how. (DN 69). The Court granted the request and extended the fact-discovery deadline, for the third time, to November 4, 2024. (DN 70). The Parties were unable to complete discovery during that time and the Court granted one final extension, at the Parties request, to March 28, 2025. (DN 78).[4]

Clark produced his responses to Ricci's second set of discovery requests in January 2025. (*See* DN 94-1). Along with those responses, Ezell emailed Stebbins and informed him that she and Stopher had "the login information for the email account[.]"[5] (DN 94-2, at PageID # 460). In doing

---

[4] During the third extended discovery period the Parties participated in an ultimately unsuccessful settlement conference before United States Magistrate Judge Lanny King. (*See* DN 71).
[5] Stebbins argues it was far from clear that Ezell's email suggested that they regained access to the account. (DN

8

so, Ezell proposed to show Ricci and Stebbins the account via Zoom, as she believed it did not make sense to download and produce its contents digitally. (*Id.*) Stebbins declined that request, explaining that the circumstances gave cause to believe Clark altered the account since the time at issue and only a forensic examination of the account and the Scotts' devices would accurately show what was done, when, and by whom. (DN 111, at PageID # 1021).

Kelly and Wyatt responded to Ricci's second set of discovery requests in early February 2025 and Wyatt provided twelve pages of responsive communications, the first either had produced in discovery (DN 110, PageID # 1006-08). Those communications revealed discussions Wyatt had about the emails dating back to early 2022. (*Id.*). To allow Stebbins time to review the communications prior to the depositions, they were rescheduled to March 18, 2025. (*Id.*).

Kelly and Wyatt's depositions were revelatory, to say the least. They both denied any knowledge that Clark was the person responsible for the "Kelly Spencer" emails prior to this litigation. (DN 108-14; 108-15). They also testified that Clark did not tell them about this litigation until 2024, at least a year after it was filed.[6] (*Id.*). They testified that Clark never reviewed any discovery responses or searched for information with them, that they did not communicate with counsel until January 2025, and denied seeing the complaint, answer, or discovery responses until during or shortly before their depositions. (*Id.*). They did not recall signing or recognize the signatures on their respective discovery verifications signed in July 2024. (*Id.*).

Wyatt testified that he was aware of the emails at the time they were sent but believed a fellow college student was behind the account. (DN 108-14). He recalled that he had sent emails to his apartment building about Ricci's son and testified that he had never searched for them, and

---

116-1, at PageID # 1155).

[6] Wyatt specifically testified to learning of this lawsuit in February or March 2024, and Kelly sometime between February and August 2024. (DN 108-14, at PageID #887; DN 108-15, at PageID #916).

was not sure if he could still access them because he used his school email account to send them, which was deactivated last year. (*Id.*). He also testified that when he reviewed Ricci's second set of discovery requests with counsel, he refused to produce his devices for imaging. (*Id.*). As for Kelly, she testified that she used a personal computer ("PC") and cell phone in 2022, but that sometime in 2023 Clark replaced the PC and that near the end of 2023 she traded in her cell phone. (DN 108-15). When asked whether she or Clark searched her phone for any relevant messages, she testified that Clark had told her they no longer had any of the devices they did at the time the emails were sent. (*Id.*).

Following the alarming discoveries made during Kelly and Wyatt's depositions, which would not be revealed to this Court for another two and a half months, Stopher and Ezell reviewed their discovery responses with them, made amendments, and served the amended responses. (*See* DN 113-1; DN 113-2). Both of their responses maintained that they lacked any knowledge of Clark's involvement in the "Kelly Spencer" emails at the time they were sent, repeatedly stating throughout that they learned about Clark's involvement "upon" and/or "following the filing of this lawsuit[.]" (*Id.*). As a part of those amendments, Wyatt produced over 100 pages of responsive documents and communications between himself and Clark, himself and Kelly, and third parties, with only days left in the discovery period. (DN 110, at PageID # 1008). Meanwhile, Stebbins claims that he spoke with Stopher and Ezell to inform them of Ricci's intent to either settle the dispute or move for sanctions. (DN 110, at PageID # 1008-10). Stebbins also issued another subpoena to Google to determine the definitive date of deletion of the "Kelly Spencer" account. (*Id.*). Stopher and Ezell withdrew on March 31, 2025 and on this same date, an appearance was entered by counsel Clark C. Johnson and Jeremy Lister-Perlman with the law firm Kaplan Johnson Abate & Bird LLP who remain as counsel currently. (*See* DN 81; DN 82).

10

In the April 2025 status call following current defense counsels' appearances, the Parties indicated they were working through some discovery issues informally, declining to apprise the Court about their discoveries during Kelly and Wyatt's depositions, and raised a dispute over the deposition of Ricci's son. (DN 83). Despite Ricci's arguments in opposition, the Court found that the Scotts had attempted to schedule the deposition in February 2025, prior to the discovery deadline, and were unable to do so given difficulty reaching Ricci's son's attorney. (*Id.*). Accordingly, the Court expanded discovery for the limited purpose of completing the deposition. (*Id.*). Meanwhile, Stebbins sent a letter to current counsel demanding sanctions and stating that Ricci "fully intend[s] to pursue sanctions . . . should an agreement not be reached[.]" (DN 91-1, at PageID # 427-30).

Later that month, the Parties reported that they had scheduled the deposition but raised another dispute over Clark Scott's refusal to produce his electronic devices for imaging. (DN 84). Before permitting the Parties to expend additional resources, the Court directed the Parties to participate in another settlement conference and stayed the remaining scheduling order deadlines and the electronics dispute. (DN 86). The Court did, however, permit the Parties to proceed with the deposition of Ricci's son. (*Id.*) The deposition was scheduled for June 4, 2025 and settlement conference scheduled for July 24, 2025. (DN 87; DN 88).

On May 15, 2025, Stebbins received the new Google subpoena results, revealing that the "Kelly Spencer" account did not list a deletion or disabled date and the recovery email connected to the account had been changed since December 2022 from "kelly@kellyscott.com" to "clark@clarkscott.com." (DN 108-19). On June 2, 2025, two days before the deposition of Ricci's son was scheduled to occur, Ricci filed a motion for reconsideration, asking the Court to reconsider its order permitting the Scotts to depose her son prior to the settlement conference and resolution

11

of the outstanding electronics dispute. (DN 91). In doing so, Ricci apprised the Court of the revelations made at the end of the discovery period, requesting leave to move for sanctions. (*Id*).

When Ricci's son did not appear for his June 4, 2025 deposition, awaiting the Court's ruling on Ricci's motion, the Scotts filed a motion to show cause for his failure to appear. (DN 92). The Court ordered expedited briefing on both motions and scheduled an in person hearing on July 1, 2025. (DN 93). Based on the Parties' briefing and oral arguments presented at the hearing, the Court denied both motions but determined that the deposition could occur after the settlement conference. (DN 96). The Court reserved ruling on Ricci's request to file a motion for sanctions until after the settlement conference. (*Id.*).

After the settlement conference concluded without resolution, the Parties conducted the deposition of Ricci's son, and the Court granted Ricci's requested leave to file the motion for sanctions now before the Court. (DN 107).

II.    Ricci's Motion for Sanctions (DN 108-1)

Ricci asks the Court to enter default judgment against the Scotts, arguing their ongoing display of bad faith conduct satisfies the four-factor test outlined by the Sixth Circuit to decide whether to enter default judgment to sanction litigation misconduct.[7] She also asks the Court to forbid them from carrying out their threats of retaliation. In the alternative, she asks the Court to impose meaningful sanctions in the form of evidentiary findings. Ricci also asks that the Scotts and their former counsel reimburse her for her expenses, including attorney's fees, incurred through the entire discovery period.

---

[7] Plaintiff has filed an unopposed Motion for Leave to File Excess Pages (DN 109), arguing that she could not fully develop her arguments given the extensive factual record and numerous legal issues at play within the twenty-five-page limit for motions. The Court finds good cause for such request and grants Plaintiff's Motion.

Ricci contends sanctions are warranted by Federal Rules of Civil Procedure 26(g), 37(c), (d), and (e), and under the Court's inherent authority. In support of these requests, she argues that: (1) Clark Scott and his former counsel made illegal threats of retaliation; (2) Clark Scott has given perjured testimony; (3) Defendants presented fraudulent answers and discovery responses with forged verifications; (4) Defendants have unlawfully destroyed and withheld evidence; and (5) Defendants have ignored deadlines and otherwise engaged in dilatory conduct delaying this litigation and costing Ricci "substantial legal fees." Ricci places the onus of this bad faith conduct on Clark but argues Kelly and Wyatt and former counsels at BSG and Stites should also bear responsibility for the "enormous harm" caused to her for furthering this "deliberate dilatory" and bad faith conduct.

In support of her motion, Ricci provided various exhibits including: (1) the three Google subpoena results; (2) pre-litigation emails from Clark and Sexton; (3) various emails between Stebbins and Stites counsel; (4) excerpts from Ricci's and the Scotts' depositions; (5) a forensic expert report of the "Kelly Spencer" emails in Ricci's possession; (6) the Scotts' responses to Ricci's requests for admission; (7) Clark's responses to Ricci's first set of discovery requests; (8) Kelly and Wyatt's forged verifications; and (9) Stebbins' affidavit detailing his efforts and communications with opposing counsel throughout this litigation.

a.  The Scotts' Response (DN 112)

The Scotts filed a collective response, arguing none of their conduct is sanctionable and Ricci's motion is an attempt to "throw everything at the wall and see what sticks." They take issue with Ricci's characterization of the facts underlying her motion but generally decline to dispute them other than, as noted above, the timing of when Ricci was informed that Clark regained access to the "Kelly Spencer" account. The Scotts explain that they appropriately supplemented their

13

discovery responses, did not fail to admit anything that later proved to be true, answered all interrogatories and requests for production, and did not intentionally destroy any ESI. The Scotts attempt to persuade the Court that none of the underlying conduct was done in bad faith, there has been no truly prejudicial effect, and Ricci's motion is unwarranted because there has been no warning that any of their permissible conduct could result in sanctions. The Scotts believe the "disingenuous" nature of Ricci's motion is evidenced by her failure to seek discovery extensions to remedy the alleged defects, move to compel, or seek the Court's help to resolve discovery disputes.

   b.  Ricci's Reply (DN 117)

On reply, Ricci argues that by "generally ignor[ing] the most serious allegations," the Scotts admit them through silence. She contends that both Kelly and Wyatt were also involved in sending the emails and the destruction of evidence hides their shared responsibility. Ricci adds that the lack of prior motion practice does not undermine the present motion, as courts are not limited to issuing sanctions in circumstances where in the sanctionable party has received some sort of warning. Courts routinely sanction this type of misconduct, she explains, and the Scotts' response inappropriately attempts to minimize the severity of their conduct as "permissible litigation gamesmanship."

   c.  Interested Party Stites & Harbison's Response (DN 111)

Interested Party Stites responds by first explaining that attorneys Stopher and Ezell did not represent the Scotts when most of the alleged misconduct occurred and Ricci's request as to Stites is untimely as she failed to raise any concerns when Stopher and Ezell filed their Notice of Withdrawal six months prior. Stites argues that Ricci's attempt to impose joint and several liability on only two of the three law firms that have represented the Scotts, all of whom she alleges to be

14

involved in the misconduct, is improper, as it is inequitable and illogical to hold one firm liable for the actions of another.

Even on the merits, Stites contends that "[Ricci] offers no conduct attributable to Stites & Harbison that would warrant sanctions." Stites represents that Stopher and Ezell had no part in the destruction or withholding of evidence and no knowledge of the forged verifications, and for those reasons Ricci's motion for sanctions against it should be denied.

    d.  <u>Ricci's Reply (DN 116)</u>

On reply, Ricci reminds the Court that Stites participated in creating the false impression that Kelly and Wyatt were active participants in this litigation and failed to conduct a reasonable inquiry to verify the accuracy of Clark's representations. These actions, among others, Ricci explains, make up Stites' numerous violations of Rule 26(g). She submits that their conduct was unjustified and demonstrates bad faith; she believes this Court must impose sanctions by requiring Stites' to reimburse Ricci for her attorney's fees expended throughout discovery.

    e.  <u>Interested Party Boehl Stopher & Graves' Response (DN 118)</u>

Interested Party BSG begins its response by informing the Court that Mischel, the sole BSG attorney involved in the case, is no longer with the firm.[8] In any event, BSG directs the Court to a review of the docket, which it believes to demonstrate Mischel's active involvement in the case and Ricci's own conduct contributing to delays in discovery. BSG explains that Ricci's vague references to this Court's authority and Mischel's conduct during this litigation, and Stebbins' declaration, do not provide evidence of sanctionable conduct. BSG also points to Ricci's delay in raising issues with Mischel's representation until a year and a half after she withdrew as counsel.

---

[8] BSG filed an unopposed Motion to Remove and Replace Exhibits to Document Number 118 (DN 120), seeking to replace the exhibits filed with their Response to Plaintiff's Motion for Sanctions to redact the name of Plaintiff's son in compliance with this Court's Order (DN 107). The Court finds good cause for such request and BSG's Motion.

15

BSG adds that it was reasonable for Mischel to rely on Clark as her point of contact for the Scott family during her time as counsel, and "had no reason to doubt his candor[.]" BSG explains that at no point did Mischel willfully disregard discovery rules or defy Court orders, adopts and incorporates Stites' arguments in response to Ricci's motion to the extent applicable, and requests Ricci's motion against it be denied.

f.   Ricci's Reply (DN 119)

Ricci clarifies that sanctions against BSG are requested pursuant to Rule 26(g) and the Court's inherent authority. She explains that sanctions are warranted because Mischel "blindly accepted" Clark's claim that the discovery responses were true and correct, that the "Kelly Spencer" account was deleted, and did not affirmatively verify his claims. She adds that at no point did Mischel tell Ricci that she directed Clark to preserve the account, and that the metadata shows the account was altered during her representation. Ricci adds that Mischel acted irresponsibly by placing the responsibility on Clark to determine whether the contents of the email account were somehow accessible, and by serving their responses to Ricci's requests for admission without speaking to them. Ricci explains that Mischel did not need to be subject to a Court order to be sanctioned, her misconduct was concealed such that the present motion is timely, and that her conduct meets the Sixth Circuit's standard for bad faith.

g.   This Court's Order and BSG's and Stites' Supplemental Briefs

Upon review of the arguments presented, the Court determined additional information was necessary to aid the Court is assessing the merits of Ricci's Motion. (DN 129; DN 131). Accordingly, the Court directed BSG and Stites to provide supplemental briefs presenting facts and legal authority on their attorneys' compliance with their discovery obligations and efforts to communicate with their clients. (*Id.*). To the extent the firms needed to disclose attorney-client

16

communications to support their positions, the Court directed the Interested Parties to file that information under seal. (*Id.*). Both BSG and Stites did so. (*See* DN 132; DN 133; DN 134). Out of respect for the Scotts' attorney-client privilege and the Interested Parties' interest in maintaining confidentiality, the Court will omit most of the facts and details of those communications in this public document. Ricci filed a reply to the Interested Parties' supplemental briefs, lumping much of their conduct together.[9] (DN 137). She submits that counsels' conduct, evidenced by their supplemental briefs and accompanying exhibits, demonstrates that they were on notice of Kelly and Wyatt's failure to preserve evidence, unreasonably relied on Clark, and that Kelly and Wyatt should face the consequences resulting from such conduct. (*Id.*). In a surreply, Stites asks the Court to disregard the "new, baseless allegations" Ricci lodges against the Scotts' former counsel. (DN 138-1).

III.    Sources for Sanctions

The Federal Rules of Civil Procedure establish the discovery obligations of parties and their attorneys, and in doing so authorize courts to impose sanctions on parties and attorneys who fail to comply with them. *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500 (N.D. Ohio 2013). Sanctions serve three functions: (1) to remedy prejudice to a party; (2) to reprimand the offender; and (3) to deter future parties from engaging in similar misconduct. *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 878 (E.D. Mich. 2017) (quoting *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009)).

Generally, Federal Rule of Civil Procedure 37 governs sanctions relating to discovery. Sanctions under the Rule may include:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

---

[9] Ricci filed an unopposed Motion for Leave to Seal her reply. (DN 136). The Court grants her Motion.

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

While courts should "ordinarily rely on the Rules" to impose sanctions, it remains within the courts' inherent authority to do so. *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). A court may exercise its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when the party's conduct was "tantamount to bad faith." *Id.* at 489 (quoting *Chambers*, 501 U.S. at 45-46; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

In the most extreme cases of misconduct it is within a court's discretion, under Rule 37 and its inherent authority, to determine whether dispositive sanctions may be appropriate. *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 769 (6th Cir. 2019) (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983)). Courts look to four factors to determine whether such sanctions are appropriate: (1) whether the disobedient party's failure was due to willfulness, bad faith, or fault; (2) whether the opposing party has been prejudiced by the disobedient party's conduct; (3) whether the disobedient party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered. *Knoll*

18

*v. Am. Telephone & Telegraph Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citing *Stough v. Mayville Comm. Sch.*, 138 F.3d 612, 615 (6th Cir. 1998)).

IV.    Actual Sanctions

The Court is tasked with the difficult decision of determining whether and how to fashion an appropriate sanction and apportion fault when Clark's conduct affects not only himself, but all three named Defendants. This is especially true given their undeniably close relationship as husband, wife, and son. The Court finds sanctions warranted but ultimately declines to impose default judgment for the reasons discussed below.

a.    Willfulness, Bad Faith, and Fault

The first and preeminent factor is whether the offending party's conduct was motivated by bad faith, willfulness, or fault. A party's conduct is motivated by bad faith, willfulness, or fault if it displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his or her] conduct on those proceedings." *Mager v. Wisc. Cent. Ltd.*, 924 F.3d, 837 (6th Cir. 2019) (quoting *Carpenter v. City of Flint*, 723 F. 3d 700, 705 (6th Cir. 2013)). The offending party holds the burden of demonstrating that a failure to comply with discovery requests or participate in the proceedings against them was due to inability and not willfulness or bad faith. *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). To demonstrate inability, the offending party must prove their failures were "fostered neither by [their] own conduct nor by circumstances within [their] control[.]" *Safety Today, Inc. v. Roy*, No. 2:12-cv-510, 2014 WL 1049962, at *6 (S.D. Ohio Mar. 17, 2014).

The discovery abuses displayed in this case are so obvious that the Court is perplexed by the Scotts' contention that the "record is devoid of a single act of contempt." The record displays a pattern of evasive and misleading behavior that can only amount to willfulness and bad faith.

19

The record demonstrates that Clark engaged in the following conduct which the Court finds to support its finding of bad faith: (1) he intentionally signed Kelly and Wyatt's signatures on their discovery verifications knowing counsel and his adversary would incorrectly understand their discovery responses to be complete based on Kelly and Wyatt's personal review of them; (2) he consistently provided evasive answers in both discovery responses and deposition testimony;[10] (3) he withheld access to the "Kelly Spencer" account, whether it intentional or egregiously reckless; (4) he made untruthful representations to counsel about Kelly and Wyatt's knowledge and access to information concerning the events underlying this litigation and overall awareness of and participation in this case; (5) repeatedly delayed in providing counsel responsive information to answer discovery requests; and (6) did not produce responsive communications in discovery or supplement his discovery responses, despite subsequent disclosure through alternative sources confirming his production to be incomplete and responses inaccurate.[11]

Clark Scott began this litigation by telling Stebbins that he would prolong the case at Ricci's expense. (*See* DN 108-5). That alone does not necessarily amount to misconduct, nor does his attorney Sexton's distasteful warning about the injurious effects of litigation. However, it confirms the already strong taste of bad intent displayed through the pattern of elusive and misleading behavior Clark has exhibited. It is hard to believe that his conduct was anything but an

---

[10] Clark's representation that he did not "think" he used AWS on his home desktop may well have been a mistake. However, the Court declines to give the allegedly innocent error weight. *See Beckwith v. Robert Bosch Fuel Sys. Corp.*, No. 1:04-CV-791, 2006 WL 760314, at *3 (W.D. Mich. Mar. 23, 2006) ("the Court is not required to separate innocent mistakes from intentional discovery abuses when it is clear that Plaintiff is at fault for the utter mess discovery has become").

[11] The record displays Clark repeatedly claiming a lack of awareness or access to excuse his failure to produce essentially any relevant evidence throughout this case. Yet the circumstances support the conclusion that his lack of access and awareness were not honest mistakes, but an effort to conceal evidence without repercussion. *See Laukus*, 292 F.R.D. at 504 (explaining that memory loss to excuse the existence of previously undisclosed documents can be considered a lie "subject to proof by circumstantial evidence, admissions, and other evidence" (quoting *Valley Eng'rs Inc. v. Eletric Eng'g Co.*, 158 F.3d 1051, 1055 (9th Cir. 1998))).

intentional attempt to thwart Ricci's ability to fully investigate her claims. *See, e.g.*, *Laukus*, 292 F.R.D. at 505 (finding plaintiff's concealment of evidence, false deposition testimony, verified misleading and evasive discovery responses, and failure to correct inaccurate responses amounted to bad faith); *Fed. Trade Comm'n v. Noland*, 2021 WL 3857413, at *13 (D. Az. Aug. 30, 2021) (inferring bad faith from defendants' irresponsible decision to delete an app believed to contain relevant communications from a device right before turning the device over for imaging); *Pepin v. Wisconsin Central Ltd.*, No. 2:19-cv-42, 2021 WL 5606974, at *4 (W.D. Mich. July 26, 2021) (finding bad faith where plaintiff only began to produce social media posts in discovery after altering the account to hide or delete potentially relevant posts). His conduct, without question, amounts to bad faith.

As for Kelly and Wyatt, they failed to personally participate in this case until January 2025. In some cases, that can support a finding of fault sufficient to warrant default. *See, e.g.*, *Sword v. Dolphin Moving Sys., Inc.*, No. 8:19-cv-1073-T-02SPF, 2020 WL 42829, at *4 (M.D. Fla. Jan. 3, 2020) (finding defendants' failure to participate until after default was entered showed their ability to participate was within their control and their "heedlessness for the legal system" warranted default judgment); *Westchester Fire Ins. Co. v. 31 Operating LLC*, No. 1:21-CV-802 (DG) (LKE), 2025 WL 3460469, at *4 (E.D.N.Y. July 29, 2025) ("Defendants' willful non-engagement and failure to participate demonstrates willfulness.").

Yet Kelly and Wyatt were purportedly unaware of the lawsuit until 2024.[12] Assuming their representations are to be believed, their lack of actual notice prior to 2024 limits their personal role in the conduct undertaken on their behalf, and lack thereof. *See Grange Mut. Cas. Co. v. Mack*,

---

[12] The Court notes that Kelly and Wyatt do not take issue with service. It appears that copies of the complaint and summons were served on each of the Scotts at their home address, and service was accepted separately on their behalf by Sexton.

270 F. App'x 372, 376 (6th Cir. 2008) (acknowledging courts are hesitant, but not unwilling, to impose dispositive sanctions when misconduct is solely the attorney's fault); *Freeland v. Amigo*, 103 F.3d 1271, 1278 (6th Cir. 1997) (recognizing it is inappropriate to impose dispositive sanctions against a blameless litigant). However, even after their belated notice of this lawsuit they did not speak with counsel, see a pleading, or review a discovery response until 2025. There is no evidence that they "displayed reasonable diligence in attempting to discover the status of the case[,]" declining to even ask about the substance of the claims against them and simply relying on Clark to handle it for them. [13] *Burks v. Washington*, No. 19-cv-10027, 2023 WL 2612607, at *18 (E.D. Mich. Mar. 23, 2023) (quoting *Stooksbury v. Ross*, 528 F. App'x 547, 554 (6th Cir. 2013)). Their inaction and disinterest in a lawsuit of which they are named Defendants demonstrates a clear disregard for the effect of their conduct on these proceedings. *See Brown v. City of East Cleveland*, No. 1:18CV192, 2018 WL 4006810, at *3 (N.D. Ohio July 27, 2018) ("Plaintiff's complete failure to participate in any aspect of this lawsuit can be construed as evidence of willfulness and fault."); *Assurity Life Ins. Co. v. Estate of Champan*, No. 2:16-cv-02196-STA-dkv, 2016 WL 6242035, at * 2 (W.D. Tenn. Oct. 25, 2016) ("Defendants' actions in failing to participate in this lawsuit before entry of default showed a reckless disregard for the effect of their conduct on judicial proceedings").

Rather than seeking to participate at the outset of this case, or immediately upon learning of it, to swiftly resolve Ricci's claims against them, Kelly and Wyatt took an alarming sit back and see approach, only involving themselves when Clark thought it necessary. Communications with counsel reveal that even after discovering Clark's deceptive practices, Kelly sought to continue

---

[13] Specifically, Wyatt testified that his father updated him about the case twice after informing him of it to speak about a potential deposition and handled things with the attorneys. (DN 108-14, at PageID # 887-90). Kelly testified that Clark had Power of Attorney for her so he could handle and sign things for her and she never asked him for specifics about the allegations Ricci made or to see the complaint. (DN 108-15, at PageID # 921).

relying on him to act for her. (DN 133-2, at PageID # 1653). Unlike Clark, Kelly and Wyatt's conduct in this case, or rather lack thereof, does not definitively support a finding of bad faith. However, their reckless disregard for these proceedings renders them far from blameless and supports a finding of fault.

The Scotts' attempt to excuse Clark's efforts to mislead the Court, his counsel, and his adversary into believing Kelly and Wyatt were actively participating in this litigation are not well taken. This Court cannot fathom a scenario in which it would be permissible to engage in a pattern of evasive, misleading, and dilatory conduct based on a personal belief that claims against them are unfounded. Even if Kelly and Wyatt lack any culpability and Ricci's claims against them are without merit, that is a question for judge and jury and precisely what this legal system is for. *See Gamby v. Equifax Info. Servs., LLC*, No. 06-11020, 2008 WL 4146387, at *2 (E.D. Mich. Sep. 7, 2008) ("Common sense would dictate that a party with a strong case on the merits would wish to demonstrate that fact by prompt and complete discovery compliance, so as to not delay ultimate victory on dispositive motions or at trial."); *Monroe v. Ridley*, 135 F.R.D. 1, 5 (D.D.C. 1990) ("To even suggest that defendant's opinion of plaintiff's case should have any bearing upon the discovery process demonstrates willful disregard for the responsibilities defendant owes the court and his opponents.").

b. Prejudice

The second factor asks whether the innocent party has been prejudiced by the offending party's misconduct. A party is prejudiced if they are deprived "of information critical to their case and they are forced to expend significant time and resources addressing the discovery abuses." *DiLuzio v. Village of Yorkville, Ohio*, No. 2:11-cv-1102, 2016 WL 7406535, at * 30 (S.D. Ohio Dec. 22, 2016) (citing *Grange Mut. Cas. Co.*, 270 F. App'x at 376). Even in cases where a party

23

ultimately obtains the information sought, courts have nonetheless "found prejudice where the concealment of relevant documents has impeded a party's ability to fully discover an issue." *Laukus*, 292 F.R.D. at 511 (collecting cases).

The Court finds that Ricci has suffered prejudice from the Scotts' conduct and lack thereof. Ricci was denied access to nearly every responsive document and all responsive communications until the final days of discovery, over two years into the case and after conducting the Scotts' depositions, despite such information clearly being available from the get-go. *See, e.g.*, *Gamby, LLC*, 2008 WL 4146387, at * 2 (finding prejudice from defendant's willful and/or negligent failure to produce discovery in a timely and complete fashion). As Ricci points out, the unjustifiable delay hindered Ricci's ability to fully investigate her claims, effectively conduct depositions, form a litigation strategy, and engage in settlement.[14] Ricci was also prejudiced by the loss of the "Kelly Spencer" emails, the timing of which is far from clear, the loss of Kelly's text messages, and the Scotts' demonstrably and significantly faded memories. *See Covert v. Cellco P'ship*, 563 F. Supp. 3d 767, 772 (M.D. Tenn. 2021) ("Prejudice occurs where the passage of time leads to missing or unavailable evidence of the possibility of witnesses' faded memories." (internal citation omitted)). She is left to only guess about the potential evidence lost while the Scotts' failed to reasonable search for, preserve, or produce evidence.[15] *See Pepin*, 2021 WL 5606974, at *5. The prejudicial effect of the loss of evidence, however, is somewhat limited by Ricci's alternative access to at least some of the "Kelly Spencer" emails and Kelly's text messages with Wyatt through Wyatt's production. *See id.* (finding some level of prejudice where plaintiff failed to produce documents it

---

[14] While Stebbins appears to have asked questions pertinent to the merits of the case during each of the Scotts' depositions, time was expended inquiring about the circumstances pertaining to the lack of document production and the Scotts' ability to search for and provide such information.

[15] The Scotts' blanket statement that they did not lose or destroy relevant information is of little help. Had the Scotts simply complied with their discovery obligations from the outset of this litigation there would be no need to make such a claim.

was legally obligated to provide even though defendant was able to obtain them through alternative means).

The Court also notes that while Ricci complied with her own discovery obligations and this Court's Orders when intervention was required, the record also demonstrates delay in apprising the Court and opposing counsel of her suspicions regarding the Scotts' failure to comply with theirs. Stebbins took (1) seven months to raise the concerns over Kelly and Wyatt's lack of discovery responses and document production, (2) six months to inform the Court about Clark's access/failure to delete the account, and (3) three months to apprise the Court of the discoveries made during Kelly and Wyatt's bombshell depositions.[16] Despite suspecting spoliation of the "Kelly Spencer" account as early as December 2023, Stebbins delayed informing opposing counsel until September 2024.

That said, Ricci still attempted to bring concerns to the Court, even if untimely, and Stebbins engaged in numerous informal conferral efforts. It would be inappropriate to find that Ricci was not prejudiced at all because she failed to raise her concerns sooner where, as here, she made some attempt to raise her concerns, sought to cooperate and work through discovery even considering her adversaries' delay, and she and her counsel were operating in the dark about the true extent of the misconduct. *See Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, (S.D. Ohio 2020) (finding defendant's position that plaintiff had the burden of verifying defendant's production was complete "absurd"); *Fulkerson v. Kirkpatrick*, No. 3:23-CV-00520-RGJ, 2025 WL 2522967, at *6 (W.D. Ky. Sep. 2, 2025) ("Plaintiff had no obligation to continue seeking the discovery that Defendants represented was not in their possession and

---

[16] The Court recognizes Ricci's position that Stebbins was merely complying with this Court's meet and confer process but notes that the severity of the conduct alleged surely warranted some level of court intervention sooner. The process is meant for meaningful conferral efforts; the Court is perplexed by the idea of a seven-month long conferral effort over something as straightforward as generally responding to discovery prior to seeking intervention.

appropriately took Defendants at their word."); *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 509107, at *9 (E.D. Tenn. Feb. 18, 2022) ("Defendants were not honest in their discovery responses and their representations to the Court. Thus, Defendants' arguments that Plaintiffs failed to take steps to compel Defendants to supplement with honest answers is meritless at best."). Parties and their counsel are expected to participate in discovery in good faith. When a party fails to do so, they cannot avoid consequence by pointing the finger at their adversary for failing to catch them sooner. *Fulkerson*, 2025 WL 2522967, at *6.

The Scotts claim that by declining to seek additional discovery and instead resorting to dispositive sanctions, Ricci demonstrates that her request for sanctions is disingenuous, and she has not suffered prejudice. They point to the fact that she could still seek to compel Clark or Wyatt's devices for imaging but declines to dispute their objections to production. The Scotts appear to overlook the fact that Ricci expressly brought a dispute over Clark's failure to produce his devices to the Court. Ricci has clearly suffered prejudice, but it is somewhat limited as outlined above.

    c.  <u>Prior Warnings</u>

The third factor considers whether the offending party received warning that their conduct could result in dispositive sanctions. In many instances courts decline to impose dispositive sanctions when the offending party was not explicitly warned of the possibility of default or dismissal prior to its imposition. *Carpenter*, 723 F. 3d at 708.

Ricci seeks dispositive sanctions in her motion, putting the Scotts on notice that the Court would be considering them. *See, e.g.*, *Plastech*, 257 F. Supp. 3d. at 873 (finding sufficient notice where defendants explicitly requested dismissal in their motion for sanctions). Even so, Clark need not be warned that his conduct could result in default. *Laukus*, 292 F.R.D. at 512 (finding it

"[un]necessary to warn a party that offering knowingly false deposition testimony or evasive discovery responses, or the concealment of highly relevant discovery, might compromise one's ability to continue to litigate in federal court").

However, the Court recognizes that it has been rather lenient based on the assumption that the Parties were participating in discovery in good faith and counsel was engaged in meaningful conferral efforts. No prior sanctions have been imposed, and no warnings given. While the Court need not impose prior sanctions before resorting to default as to Clark, this lack of warning weighs against the imposition of dispositive sanctions against Kelly and Wyatt. *See, e.g.*, *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13-13804, 2015 WL 13039534, at *5 (E.D. Mich. June 23, 2015) (declining to impose default where there was no evidence of willfulness or bad faith, no warning from the Court, and less severe sanctions had not been considered).

### d.    Less Drastic Sanctions

The fourth and final factor of this Court's analysis is the consideration of less drastic sanctions. While there is no requirement that a court issue lesser sanctions before entering default, it is still important to consider the availability of lesser sanctions given the "preference in our system of justice to have actions decided on the merits[.]" *Laukus*, 292 F.R.D. at 512. Sanctions serve to remedy prejudice, reprimand the offender, and to deter others from engaging in similar misconduct. *Plastech*, 257 F. Supp. 3d at 878. For that reason, in the face of undeniable bad faith and contumacious conduct, lesser sanctions are only appropriate if they sufficiently "protect the integrity of pretrial procedures[.]" *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997).

The Court considered Ricci's proposed alternative sanctions, which essentially amount to default as to liability against Kelly and Wyatt, and finds them inappropriate. First, the Court declines to impose adverse inference instructions at this juncture as the timing, extent, and other

27

circumstances surrounding the allegedly spoliated evidence remain largely unclear. Further, the adverse inferences Ricci requests impose the harshest punishment on the Defendants who, as Ricci admits, do not bear the brunt of the blame. Kelly and Wyatt's inaction in this case was severely prejudicial, yet their lack of bad faith or warning leads the Court to conclude that entering default against them is inappropriate. And while default judgment appears appropriate against Clark Scott, *see Grange Mut. Cas. Co.*, 270 F. App'x at 378 ("It is in cases like this one, where the obstruction prevented the other party from accessing evidence needed to bring the case, that default is most likely to be [] appropriate"), the Court declines to impose default as a sanction of first resort.

The Court has extensively reviewed the record and considered numerous forms of sanctions and pathways to protect the integrity of these proceedings. The Court finds it necessary that Ricci be permitted to conduct additional discovery so that the relevant facts and issues can be fully developed. Accordingly, the Court will *sua sponte* re-open discovery for ninety days for the purpose of permitting Ricci to seek the forensic imaging of the hard drives of the Scotts' devices that remain, understood to be Clark and Wyatt's, and re-take each of the Scotts' depositions to explore the information revealed by the last-minute document production. *See, e.g.*, *Crawford v. Robles*, No. CV-23-02209-PHX-MTL (ESW), 2025 WL 2821280, at *5 (D. Az. Oct. 3, 2025) (denying motion for sanctions and *sua sponte* reopening discovery so that the "relevant facts and issues can be fleshed out").

As a sanction, the additional discovery will be conducted at Clark Scott's expense. *See, e.g.*, *Price v. Eagle Express Lines, Inc.*, No. 5:14-cv-00034, 2015 WL 13021962, at *3 (N.D. Ohio Sep. 17, 2015) (sanction of attorney's fees and costs plaintiff will incur in re-doing discovery previously taken and obtaining supplemental discovery due to defendants' misconduct); *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 1:19-cv-3766-GHW, 2020 WL

28

7342724, at *19 (S.D.N.Y. Dec. 11, 2020) (sanctioning plaintiff's failure to comply with discovery obligations by reopening fact discovery at plaintiff's expense, finding it appropriate given that "the universe of withheld documents is still unknown"). The Court understands that this gives the Scotts a second bite at the apple but finds this alternative appropriate considering this Court's strong interest in the adjudication of cases on their merits. Further, the Scotts shall pay Ricci's reasonable attorney's fees and costs expended in litigating this motion.

V.    Threats of Retaliation

Ricci also seeks an order prohibiting the Scotts from carrying out their threats to retaliate against Ricci and her son. The Court declines to do so. First, Ricci's argument is underdeveloped and lacking in persuasive authority. Second, it is unclear that the relief sought is within the purview of this Court. *See Smith v. Kentucky Fried Chicken*, No. 06-426-JBC, 2007 WL 162831, at *5 (E.D. Ky. Jan. 18, 2007) ("An injunction [] will generally not issue to restrain torts, such as defamation or harassment, against the person before there is usually an adequate remedy at law which may be pursued in seeking redress for such abuses." (citing *Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967))). Even so, the record reflects that only Clark Scott made what could be viewed as threats of retaliation near the beginning of this case in 2023 and specifically related to his conduct throughout this litigation. Ricci does not demonstrate that Clark Scott has or will act on those threats outside the confines of this litigation. It would be inappropriate to grant such relief under these circumstances.

VI.    Monetary Sanctions Against Former Counsel

Ricci also seeks monetary sanctions against the Scotts' "prior counsel – the firms of Boehl, Stopher & Graves (Attorney Mischel) and Stites & Harbison (Attorneys Stopher and Ezell)[.]" (DN 108-1, at PageID # 731). Ricci submits that they should be found jointly and severally liable

alongside the Scotts for any attorney's fees and costs awarded. She contends that former counsels' conduct amounts to bad faith and that monetary sanctions are appropriate under this Court's inherent authority, Rule 37, and Rule 26(g). The question now becomes whether, based on former counsels' conduct, their law firms can be found jointly and severally liable for the monetary sanctions imposed.

Unmentioned by any Party in their briefs, the Sixth Circuit has held that courts lack authority to sanction a law firm under Rule 37 because the Rule explicitly refers to sanctioning the party and their attorney. *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 382-83 (6th Cir. 2022). The Sixth Circuit has not answered whether courts can sanction a law firm under Rule 26(g), but the same line of reasoning leads this Court to believe that it cannot. Rule 26(g) expressly considers the imposition of sanctions upon "the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g).

Courts may impose sanctions against law firms under the court's inherent authority upon finding that they litigated "in bad faith, vexatiously, wantonly, or for oppressive reasons" or if sanctions are otherwise appropriate "in the interest of justice." *NPF Franchising, LLC*, 37 F.4th at 383. This Court is unable to locate precedent for sanctioning a law firm without also sanctioning the individual attorney. Even assuming the Court can do so, the record does not support the imposition of sanctions against the law firms.

Surely, taken together, had one attorney or firm represented the Scotts continuously throughout this case there might be a viable argument for this Court's consideration. Yet here, in the three years since Ricci filed her complaint, the Scotts have gone through four changes in counsel, three of whom appeared on the record, and Ricci only seeks sanctions against two despite the misconduct occurring throughout all the attorneys' time representing the Scotts—and likely

beginning before it.[17] The Court finds it unjust to hold BSG and Stites counsel equally to blame alongside the Scotts when there are other counsel arguably involved in but notably absent from Ricci's request for sanctions.

The Court also finds such sanctions inappropriate because Clark Scott's deceptive conduct in these proceedings were not only directed at this Court and his adversary, but his own counsel. *See Lauber v. Belford High School*, No. 09-CV-14345, 2011 WL 9516599, at *3 (E.D. Mich. Oct. 27, 2011) (recognizing courts should exercise caution before sanctions counsel who reasonably relies on their client's misrepresentations); *Lucas v. Jos. A. Bank Clothiers, Inc.*, 217 F. Supp. 3d 1200, 1205-07 (S.D. Cal. 2016) (same); *see also U.S. v. Ausmus*, 774 F.2d 722, 727 (6th Cir. 1985) ("Professional standards do not require counsel to disbelieve a client and check with other sources unless counsel has a basis for such disbelief."). The record presented does not demonstrate that former counsel knew of Clark's efforts to mislead and withhold information from them such that this Court can conclude they were active participants in perpetrating his abuse of these proceedings. *See Blasi v. United Debt Servs., LLC*, No. 2:14-cv-83, 2017 WL 2255525, at *3 (S.D. Ohio May 23, 2017) (recognizing the party requesting sanctions has the burden of proving both that sanctionable conduct occurred, and that the misbehaving party's attorney was involved in it). The record reflects counsels' efforts to ensure information was obtained directly from each client and Clark repeatedly delaying and failing to respond to their requests for information. (DN 133, at PageID # 1631-32; DN 133-1, at PageID # 1637-39; DN 133-2, at PageID # 1643; DN 134-4). The Court also declines to find former counsel to blame or acting in bad faith based on the loss of

---

[17] Despite both Stites and BSG raising such an issue in their initial responses to Ricci's motion, she has done little to distinguish them. Instead, Ricci consistently lumps their conduct together along with that of former counsel Sexton, whom she inexplicably does not seek sanctions against, as evidenced by her latest reply to Stites and BSG's supplemental briefs.

evidence when the timing and extent of such loss remains unclear.[18] Ricci fails to demonstrate that counsels' conduct amounts to bad faith such that BSG and Stites should be found jointly and severally liable for the Scotts' misconduct.

While the Court declines to impose sanctions in this instance, the Court must comment on the fact that counsel from two separate, reputable, law firms found it appropriate to represent two clients whom they appeared to have never met, let alone spoken to or communicated with, prior to engaging in discovery and general representation on their behalf. Had counsel simply spoken with each client from the outset of this litigation, some (if not all) of this mess may well have been avoided. This is not a class action where counsel represents a large group of clients with largely identical interests. Counsel represented three people, each with their own interest in the outcome . . . and only spoke to one. The Court is deeply troubled by the notion that such a practice is reasonable or should be accepted in this profession that holds its officers to the highest ethical and professional standards. This case presents a clear example of why it should not.

VII.    Conclusion

The reprehensible conduct displayed throughout these proceedings warrants sanctions. However, the severe action Ricci seeks is inappropriate as a sanction of first resort given the differing levels of fault amongst the Scotts, the alternate means to rectify the resulting prejudice, the full extent of which remains unclear, and other factors contributing to the delays and inaction in these proceedings. Based on the foregoing, the Court declines to impose default judgment and imposes the monetary sanctions discussed above. In granting the Scotts this opportunity to rectify

---

[18] As it relates to Kelly's failure to preserve her physical phone and PC in 2023, the Court notes and both firms point out in their briefs, that the Parties found it unnecessary at the outset of the case to discuss special procedures or preservation efforts concerning ESI. The need for the Scotts' physical devices did not arise until September 2024, after Clark's deposition. The record also reflects that Stopher and Ezell took that new request seriously. (*See* DN 133-2).

their wrongdoings and Ricci the opportunity to reach the merits of her claims, the Court advises the Parties and current counsel to proceed through this briefly extended discovery window expeditiously. Further delays in seeking Court intervention, if intervention appears necessary, are extremely unwise.

**The Defendants are expressly advised and warned that they are expected to *personally* participate in this matter in good faith. In denying in part Plaintiff's motion, the Court does so without prejudice such that Plaintiff can renew her motion for sanctions should it be appropriate. Such sanctions may include and range up to default judgment.**

### ORDER

Based on the foregoing, it is **HEREBY ORDERED** that discovery is re-opened for **ninety (90) days from the date of entry of this Order** for the limited purposes of permitting Plaintiff to seek to obtain the Defendants' remaining electronic devices for imaging and deposing Defendants. The Court will re-set a dispositive motion deadline after the re-opened discovery deadline by subsequent Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions (DN 108) is **GRANTED in part and DENIED in part without prejudice** as follows**.** Plaintiff's request for default judgment against Defendants is **DENIED**. Plaintiff's request for monetary sanctions against Interested Parties' Boehl Stopher & Graves, LLP and Stites & Harbison, PLLC is **DENIED**.

As sanctions, the Defendants shall reimburse Plaintiff's reasonable expenses, including attorney's fees, incurred in bringing this Motion. Further, Defendant Clark Scott shall reimburse Plaintiff's reasonable expenses, including attorney's fees, incurred during the re-opened discovery period.  Since the full amount to be paid cannot be determined until the conclusion of the re-opened

33

discovery period, Plaintiff is granted leave to file a motion for reasonable expenses, including attorney's fees, **no later than seven (7) days** from the close of discovery. Plaintiff's motion shall provide sufficient specificity and itemization to allow meaningful review. Defendants' response, if any, shall be filed **no later than seven (7) days** after Plaintiff's motion has been filed.

**IT IS FURTHER ORDERED** as follows:

(1) Plaintiff's Motion for Leave to File Excess Pages (DN 109) is **GRANTED**.

(2) Interested Party Boehl Stopher & Graves, LLP's Motion to Strike and Substitute Response to Motion (DN 120) is **GRANTED**.

(3) Plaintiff's Motion to Strike and Substitute Response to Motion (DN 127) is **GRANTED**.

(4) Plaintiff's Motion for Leave to Seal Document (DN 136) is **GRANTED.**

(5) Defendants' Motion for Summary Judgment (DN 121) is **DENIED without prejudice** to re-filing after the re-opened discovery period.

(6) Plaintiff's Motion for Leave to File Excess Pages (DN 122) is **GRANTED.**

(7) Plaintiff's Motion for Partial Summary Judgment (DN 123) is **DENIED without prejudice** to refiling after the re-opened discovery period.

Copies:    Counsel of Record